UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTEN SIMMONS, Personal
Representative of Estate of
Marvin Johnson, deceased,

      Plaintiff,

                                       Case No. 24-10815

v.

                                       Hon. F. Kay Behm

GENESEE COUNTY, *et al.*,

      Defendants.
_____/

**OPINION AND ORDER DENYING
<u>MOTIONS TO DISMISS (ECF NOS. 46, 47)</u>**

### I.    PROCEDURAL HISTORY

Marvin Johnson was a pretrial detainee at the Genesee County Jail when he contracted COVID-19 and died at the age of 47. The personal representative of his estate, Kristen Simmons, filed this § 1983 action against Genesee County and several medical providers, alleging that Defendants were deliberately indifferent to Johnson's serious medical needs. Plaintiff also alleges claims of medical malpractice against the medical providers. (ECF No. 42).

After certain Defendants moved to dismiss the complaint, the court permitted Plaintiff the opportunity to amend. (ECF Nos. 35, 41). Plaintiff filed an

amended complaint on November 13, 2024. (ECF No. 42). Defendants Genesee

County, Merissa Moses, R.N., Lori Cool, R.N., Chantell Jones, L.P.N. and Sparkle

Goodman, R.N., moved to dismiss the amended complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6).[1] (ECF Nos. 46, 47). The court heard oral argument

on Defendants' motions on April 9, 2025, and took the matter under advisement.

For the reasons explained below, Defendants' motions are denied.

## II.    FACTUAL BACKGROUND

Marvin Johnson was a pretrial detainee at the Genesee County Jail

beginning on March 17, 2021. At that time, Dennis Lloyd, D.O., was the attending

physician and was employed by or was the agent of Genesee County. (ECF No. 42

at ¶ 20.) Other medical providers at the jail, who are also alleged to be employees

or agents of Genesee County, included Merissa Moses, R.N., Lori Cool, R.N.,

Chantell Jones, L.P.N., Sparkle Goodman, R.N., and John Bexton, L.P.N. (*Id.* at

¶ 21.)

At the time Johnson arrived at the jail, he suffered from diabetes,

hypertension, obesity, and was a former chronic smoker of tobacco and

methamphetamine. (*Id.* at ¶ 22.) According to Plaintiff, these medical conditions

_____

[1] Defendants Dennis Lloyd, D.O., and John Bexton, L.P.N. filed an answer to the amended
complaint and have not moved to dismiss. (ECF No. 43).

placed him at high risk for severe complications, including death, if he was infected by COVID-19. (*Id.*) At the jail, Johnson was housed in close contact with other inmates and jail staff. (*Id.*)

Plaintiff alleges that on March 15, 2021, detainees at the jail began receiving the COVID-19 vaccine. (ECF No. 42 at ¶ 23.) On March 25, 2021, the Genesee County Sheriff's Office announced that detainees at the jail had access to the Johnson & Johnson vaccine. (*Id.*) Plaintiff alleges that each of the nurse defendants had access to the vaccine and the ability to administer it to detainees upon request. (*Id.* at ¶ 24.)

According to the complaint, each defendant was aware that jails were "hotspots for the spread of COVID-19." (*Id.* at ¶ 26.) As of March 25, 2021, 139 incarcerated individuals and four staff members had died of COVID-19 in the Michigan prison system. (*Id.* at ¶ 27.) Plaintiff alleges that Johnson made multiple requests to be vaccinated for COVID-19, but his requests were disregarded or refused. (*Id.* at ¶ 28.) Johnson's wife also called the jail multiple times to request that Johnson receive the vaccine. (*Id.*)

Specifically, Johnson was seen by Dr. Lloyd and Nurse Cool on April 2, 2021. At that visit, his blood work showed high triglycerides and early diabetes. (ECF No. 42 at ¶ 29.) Johnson requested a COVID-19 vaccine, but Lloyd and Cool refused to

3

administer it, although it was within their control to do so. (*Id.*) Medical staff continued to monitor Johnson's fasting blood sugar, which remained elevated, and he was started on medications as of April 27, 2021. (*Id.* at ¶ 30.) Johnson was diagnosed with non-insulin dependent diabetes mellitus and hypercholesterolemia. (*Id.*)

On April 13, 2021, the Genesee County Health Department announced that the Pfizer and Moderna COVID-19 vaccines would be available to Defendants, because the use of the Johnson & Johnson vaccine had been paused. (ECF No. 42 at ¶ 31.)

On April 28, May 2, May 4, and May 12, 2021, Johnson's fasting blood sugar was checked and remained high. Plaintiff alleges that Johnson requested the vaccine from Cool on these dates, but she refused to administer it, even though providing the vaccine was within her control. (*Id.* at ¶ 32.) Johnson's blood sugar remained high when checked on May 13, 15, and 19, 2021. (*Id.* at ¶ 33.) Plaintiff alleges that Johnson requested the vaccine from Cool on these dates, but she again refused his request. (*Id.*)

On July 6, 2021, Johnson submitted a written request for a COVID-19 vaccine and to be seen for nerve pain. (*Id.* at ¶ 34.) Johnson was seen by Chantal Jones, L.P.N, who denied his request for the vaccine, even though it was within her

4

control to administer. (*Id.*) On July 9, 2021, Johnson was seen by Jones when he requested prescription medication for his nerve pain. (*Id.* at ¶ 35.) Plaintiff alleges that Jones again refused to administer a COVID-19 vaccine as requested by Johnson. (*Id.*)

On July 14, Johnson attended a chronic care visit with Dr. Lloyd and Nurse Cool for his hypertension. Plaintiff alleges that Johnson again requested a COVID-19 vaccine, which was denied, even though Lloyd and Cool had the ability to administer it. (*Id.* at ¶ 37.) On August 9, 2021, Johnson submitted another written request for a COVID-19 vaccine, and "said his wife said she would be calling every day until he gets it." (*Id.* at ¶ 38.) Plaintiff alleges that Johnson was seen by John Bexton, L.P.N., who refused his request for a vaccine, even though he had the ability to administer it. (*Id.*)

On August 12, 2021, Johnson submitted a written request to see a mental health doctor. (*Id.* at ¶¶ 39-40.) He submitted another request on August 13, 2021, seeking a mental health evaluation and a COVID-19 vaccine. (*Id.*) On August 16, 2021, he was seen by Dr. Lloyd, who diagnosed him with bipolar disorder. (*Id.* at ¶ 41.) Plaintiff alleges that Johnson requested a vaccine during this visit and Dr. Lloyd denied the request. (*Id.*)

On August 17, 2021, Johnson submitted another sick call request, asking for medication for his nerve pain. (*Id.* at 42.) Nurse Cool denied this request, because Johnson "already saw Dr. 8/16 + started meds." (*Id.*) Plaintiff alleges that Johnson asked for a vaccine from Cool, but his request was denied. (*Id.*)

On September 9, 2021, Johnson submitted written requests for a COVID-19 vaccine and to be seen at the clinic. (*Id.* at ¶¶ 43-44.) Johnson stated that he had requested a COVID-19 vaccine five times and asked why he had not been offered one. (*Id.*) A nurse believed to be Kerry Slasser noted on September 12, 2021: "Pt. on vaccine list. Pt. educated." (*Id.* at ¶ 44.)

Also on September 9, 2021, Johnson submitted a written request to be seen for a broken tooth. Sparkle Goodman, L.P.N., addressed Johnson's request and added him to the dental list on September 11, 2021. Plaintiff alleges that Johnson asked for the COVID-19 vaccine at this visit, but Goodman refused to administer it, even though it was in her control to do so. (*Id.* at ¶ 49.)

On September 13, 2021, Johnson tested positive for COVID-19. (*Id.* at ¶ 51.) On the same date, Merissa Moses, R.N., spoke with Dr. Lloyd regarding Johnson's request for Tylenol, which was provided. (*Id.* at ¶ 52.) Johnson was seen again at the clinic to evaluate his symptoms on September 16, 2021, and September 17, 2021. (*Id.* at ¶¶ 54-55.) Orders for Zithromax and Guaifenesin were entered by

Nurses Cool and Moses, respectively. (*Id.*) Johnson was seen by Dr. Lloyd and

Nurse Cool on September 21, 2021, and was diagnosed with "possible Covid-19

pneumonia." (*Id.* at ¶ 56.) They had him transported to the emergency room at

Hurley Medical Center. (*Id.* at ¶¶ 56-57.)

Upon his admission to the hospital, Johnson's records reflected his history

of smoking, drug abuse, hypertension, and diabetes. (*Id.* at ¶ 58.) Despite

treatment for COVID-19 and hypoxia, Johnson was diagnosed with acute

respiratory failure and eventually died on October 14, 2021. (*Id.* at ¶¶ 59-66.)

Plaintiff alleges that Johnson's death was the result of Defendants' refusal to

administer the COVID-19 vaccine or to arrange for the Genesee Health

Department to do so. (*Id.* at ¶¶ 66-68.)

### III.   ANALYSIS

#### A.   Standard of Review

In deciding a motion to dismiss under Rule 12(b)(6), the court "must

construe the complaint in the light most favorable to the [nonmoving party] . . .

[and] accept all well-pled factual allegations as true." *League of United Latin Am.*

*Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush*

*Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003). The complaint must provide "'a

short and plain statement of the claim showing that the pleader is entitled to

relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Moreover, the complaint must "contain[ ] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief, such as "when an affirmative defense . . . appears on its face." *Jones v. Bock*, 549 U.S. 199, 215 (2007) (quotation marks omitted). A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[ ] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Id.* at 678. However, a claim does not have "facial plausibility" when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*, 500 F.3d at 527. Showing entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

8

In evaluating the allegations in the complaint, the court must be mindful of its limited task when presented with a motion to dismiss under Rule 12(b)(6). At the motion-to-dismiss stage, the court does not consider whether the factual allegations are probably true; instead, a court must accept the factual allegations as true, even when skeptical. *See Twombly*, 550 U.S. at 555 (a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"); *id.* at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable"); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"). Indeed, in assessing the sufficiency of a complaint, the court must determine only whether "'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged." *See United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D. Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

      B.     <u>Claims against Nurses</u>

      1.     <u>Fourteenth Amendment Claim</u>

Defendants Moses, Cool, Jones, and Goodman seek dismissal of Plaintiff's Fourteenth Amendment and medical malpractice claims against them. A plaintiff

may bring a claim under 42 U.S.C. § 1983 when he is deprived "of any rights, privileges, or immunities secured by the Constitution and laws," as a result "of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. The plaintiff must demonstrate that (1) he was deprived of a constitutional right; and (2) that deprivation occurred under color of state law. *Id.* "The principle is well settled that private medical professionals who provide healthcare services to inmates at a county jail qualify as government officials acting under the color of state law for the purposes of § 1983." *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018).

Plaintiff alleges that Johnson was deprived of his right to medical care as a pretrial detainee under the Fourteenth Amendment. *See Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 591 (6th Cir. 2021) (whereas the Eighth Amendment applies to those convicted of a crime, the Fourteenth Amendment applies to pretrial detainees). To state a Fourteenth Amendment claim, a pretrial detainee must demonstrate "(1) an objectively serious medical need; and (2) that the defendants, analyzed individually, acted (or failed to act) intentionally and either ignored the serious medical need or 'recklessly failed to act reasonably to mitigate the risk the serious medical need posed.'" *Grote v. Kenton Cnty., Kentucky*, 85 F.4th 397, 405 (6th Cir. 2023) (citations omitted). "Stated differently, a pretrial

10

detainee must have a serious medical need, and the defendant must act, whether through intentional action or omission, recklessly in response to the need and the risk it presented to the detainee." *Id.* (citing *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 317 (6th Cir. 2023)).

In general, "a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017). Although courts are generally "reluctant to second guess the medical judgment of prison medical officials," medical providers "may not entirely insulate themselves from liability under § 1983 simply by providing some measure of treatment." *Howell v. NaphCare, Inc.*, 67 F.4th 302, 313 (6th Cir. 2023) (citation omitted). The provision of "grossly inadequate medical care" to a detainee may amount to deliberate indifference. *Helphenstine*, 60 F.4th at 322 (citation omitted). "Grossly inadequate medical care is medical care that is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* (citation omitted). When a detainee's medical need is obvious, care that is "so cursory as to amount to no treatment at all may amount to deliberate indifference." *Id.* (citation omitted).

The parties do not appear to dispute that Johnson had a serious medical need, in that the risk of COVID-19 infection in congregate settings is high and Johnson's medical history placed him at an increased risk for severe complications from a COVID-19 infection. *See Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) ("The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death."). Accordingly, for the purpose of this motion, the court will assume Johnson had a serious medical need.

Defendants argue that they were not deliberately indifferent to Johnson's medical need because, as they frame it, there is no constitutional right to be vaccinated. Defendants rely primarily upon the unpublished decision in *Brown v. Clark*, 2022 WL 3355805, at *3 (W.D. Ky. Aug. 12, 2022), in which the court determined that "[s]tanding alone . . . a prison's decision not to inoculate inmates does not violate the any provision of the Constitution." However, Plaintiff is not claiming a stand-alone right to be vaccinated or complaining about Johnson's conditions of confinement. Rather, Plaintiff is claiming that Defendants ignored Johnson's serious medical need for a vaccine, based upon his medical history, even though a vaccine was available and could have been administered.

Given that distinction, the reasoning in *Brown* does not preclude Plaintiff's claim. The pro se plaintiff in *Brown* generally complained about the conditions of

his confinement, including "not testing him for tuberculosis or Covid, not giving him a Covid vaccine, not providing daily cleaning supplies for his overcrowded cell, and potentially exposing him to Covid due to lack of social distancing and quarantining." *Brown,* 2022 WL 3355805, at *2. The *Brown* court determined that the deliberate indifference "analysis turns on whether the officials responded to that risk [of COVID-19] in an objectively reasonable manner." *Id.* at *3; *Wilson*, 961 F.3d at 840 (noting that the proper inquiry in a conditions of confinement case is whether prison officials responded reasonably to the risk posed by COVID-19).

Plaintiff's complaint does not challenge prison officials' general COVID-19 response, but it alleges that Defendants ignored Johnson's serious medical need. After discovery, it may turn out that Defendants responded reasonably under the circumstances and did not act recklessly or provide grossly inadequate care. As Defendants suggest, the vaccine may not have been available on demand or the nurses may not have had control over who was eligible to receive it. But this analysis requires a review of the specific factual circumstances, which are not yet in the record. *See Brown*, 2022 WL 3355805, at *3 (noting that although "the Eighth and Fourteenth Amendments don't supply any per se constitutional entitlement to vaccination[,] any deliberate-indifference claim would depend on a plaintiff's particular circumstances and the government's specific response"). At

this stage of the proceedings, Plaintiff must only allege facts stating a plausible claim; she is not required to prove her case in response to a motion to dismiss. *See Hart v. Hillsdale Cnty., Michigan*, 973 F.3d 627, 638 n.4 (6th Cir. 2020) ("As our case law makes clear . . . '[a] complaint need not set down in detail all the particularities of a plaintiff's claim against the defendant.'"). Plaintiff has plausibly alleged that Defendants acted recklessly in response to Johnson's serious medical need by refusing to administer an available, potentially life-saving vaccine, despite Johnson's multiple requests and his medical history. Whether the facts ultimately play out as alleged, and whether they support a finding of deliberate indifference, particularly under pandemic conditions, is not a matter that can be resolved on a motion to dismiss.[2] *See Helphenstine*, 60 F.4th at 323 (whether particular "course of treatment constituted deliberate indifference is a question best suited for a jury").

---

[2] At oral argument, Defendants argued for the first time that the complaint did not contain sufficient allegations of wrongdoing against Nurses Goodman and Moses, because they did not see Johnson until shortly before or after he already contracted COVID-19. Because this argument was not raised in Defendants' briefing, and Plaintiff did not have the opportunity to brief the issue, the court will not address it at this time. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (holding that in general, issues raised for the first time in a reply brief are deemed waived); *Keys v. Dart Container Corp. of Kentucky*, 2012 WL 2681461, at *7 (W.D. Ky. July 6, 2012) (Principle that issues raised for the first time in a reply are waived "applies to arguments raised … for the first time at oral argument" because it disadvantages the other party's ability to meaningfully respond.); *Probst v. Central Ohio Youth Ctr.*, 511 F.Supp.2d 862, 871 (S.D. Ohio 2007) ("It is well established that a moving party may not raise a new issue for the first time in its reply brief or at oral argument.").

2.   <u>Medical Malpractice Claim</u>

The defendant nurses also argue that Plaintiff's medical malpractice claim against them should be dismissed, because Plaintiff has not properly alleged the standard of care. According to Defendants, the complaint suggests that the nurses should be held to the same standard of care as a medical doctor. A plaintiff in a medical malpractice case must prove "(1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Wischmeyer v. Schanz*, 449 Mich. 469, 484 (1995).

With respect to the standard of care, Plaintiff alleges that the nurses had a duty "to treat Marvin Johnson with the skill and care ordinarily possessed and exercised *by practitioners of their profession* in the same or similar location." ECF No. 42 at ¶ 101 (emphasis added). Contrary to Plaintiff's argument, the complaint does not allege that all of the medical providers are subject to the same standard of care. Additionally, Plaintiff submitted an affidavit of merit from a registered nurse with the complaint, outlining the applicable standard of care for the nursing Defendants and how Plaintiff alleges it was breached. ECF No. 1-3. Defendants have not demonstrated the insufficiency of Plaintiff's pleading with respect to the medical malpractice claim.

C.    Claims against Genesee County

1.    Fourteenth Amendment Claim

Genesee County seeks dismissal of Plaintiff's Fourteenth Amendment claim, arguing that a failure to vaccinate does not rise to the level of a constitutional violation. Like the nursing Defendants, Genesee County relies upon *Brown v. Clark*, 2022 WL 3355805, at *3 (W.D. Ky. Aug. 12, 2022). As discussed above, this argument does not warrant dismissal at this stage of the proceedings.

The County further argues that Plaintiff's Fourteenth Amendment claim against it should be dismissed because Plaintiff did not properly allege municipal liability. To establish municipal liability under § 1983, a plaintiff must point to a municipal policy or custom that is behind the alleged constitutional violation. *See Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658, 690 (1978). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1117 (6th Cir. 1994) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986)). To show a municipal policy or custom, a plaintiff may look to "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with

16

final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Mosier v. Evans*, 90 F.4th 541, 548 (6th Cir. 2024) (citations omitted).

Genesee County contends that it "properly relied on the Corizon Health medical staff to treat the serious medical needs of inmates, [it] provided adequate training for its corrections staff, and there is no pattern or repeated instances of similar deaths at the jail." ECF No. 46 at PageID 511. This argument is premature, as it relies upon factual allegations that are outside of the complaint.

The County also argues that Plaintiff merely set forth conclusory allegations of municipal liability. However, the County fails to address Plaintiff's allegation that it had a "custom/practice of refusing to allow a COVID-19 vaccine administered to an individual prisoner and/or pretrial detainee, unless five (5) additional prisoners and/or detainees requested the vaccine at that time, regardless of prisoner or detainee's risk of suffering severe complications and/or death if exposed to the COVID-19 virus." ECF No. 43 at ¶ 86. Plaintiff has identified a specific policy or custom of Genesee County that allegedly caused Johnson's injury. *See Brawner*, 14 F.4th at 598 (to establish municipal liability, the plaintiff must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that [her] particular injur[ies] w[ere] incurred due to

17

execution of that policy"). Genesee County has not shown that Plaintiff's allegations of municipal liability are legally insufficient.

## 2.    Negligence/Medical Malpractice Claim

The County next argues that it is entitled to immunity from Plaintiff's negligence/medical malpractice claim under Michigan's Government Tort Liability Act. M.C.L. § 691.1407. The act generally provides immunity "from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." *Id.*; *see Hill v. City of Saginaw*, 155 Mich. App. 161, 170 (1986) (holding "the operation of a jail by a county is a governmental function").

However, the statute "does not grant immunity to a governmental agency or an employee or agent of a governmental agency with respect to providing medical care or treatment to a patient . . ." M.C.L. § 691.1407(4); *see Briggs v. Oakland Cnty.*, 276 Mich. App. 369, 371–72 (2007) (no immunity to jail nurses under § 691.1407(4)). Genesee County contends that it was not providing medical care to Johnson, but that it contracted with Corizon Health to do so. These allegations reside outside of Plaintiff's amended complaint, which alleges that the County's employees or agents provided medical care to Johnson. Therefore, whether Genesee County was "providing medical care or treatment to a patient" as contemplated by the statute is not a question that may resolved on this record.

18

Relatedly, Defendant argues that it may not be held vicariously liable for the acts of the medical providers because they were independent contractors rather than its employees or agents. *See Laster v. Henry Ford Health Sys.*, 316 Mich. App. 726, 734–36 (2016) (principal may be liable for negligent acts of its employees or agents, but not independent contractors). Again, Defendant attempts to introduce facts that are not in Plaintiff's complaint. Plaintiff alleges that the medical providers were employees or agents of Genesee County. Whether they were in fact agents of the county or independent contractors is an issue that may not be resolved on a motion to dismiss.

The County also contends that it cannot be liable for medical malpractice because it is not a licensed health care professional or a licensed health facility or agency. *See Bryant v. Oakpointe Villa Nursing Ctr.*, 471 Mich. 411, 422 (2004) (holding that medical malpractice claims arise only "within the course of a professional relationship" with "a licensed health care professional [or] licensed health care facility"). However, Plaintiff is not alleging that the County committed malpractice, but that it is vicariously liable for the malpractice *or* ordinary negligence of its agents. ECF No. 43 at ¶ 97; *see generally Est. of Swanzy by Swanzy v. Kryshak*, 336 Mich. App. 370, 385-86 (2021) (noting that "an institutional defendant is only capable of being held vicariously liable for the

professional malpractice of its employees who are licensed healthcare providers," whereas it can be held liable for the ordinary negligence of its unlicensed employees).

The cases cited by Defendant do not compel dismissal of Plaintiff's negligence/malpractice claim; rather, they provide standards to distinguish malpractice from ordinary negligence claims. *See Bryant*, 471 Mich. at 422. In those cases, the distinction mattered: malpractice cases and ordinary negligence claims have different procedural requirements and statutes of limitations under Michigan law. *See Potter v. McLeary*, 484 Mich. 397, 402 (2009) (discussing statutory provision requiring a notice of intent to sue in medical malpractice actions); *Bryant*, 471 Mich. at 432 (statute of limitations for medical malpractice claim is two years, whereas for ordinary negligence it is three years) (citing M.C.L. § 600.5805); *Kuznar v. Raksha Corp.*, 481 Mich. 169, 172 (2008) (holding "that a pharmacy cannot be directly liable for medical malpractice[, b]ut it can be directly liable for ordinary negligence"). Defendant has not explained how the characterization of Plaintiff's claim as medical malpractice or ordinary negligence matters for the purposes of its motion to dismiss. The County has not cited authority that would preclude Plaintiff's claim of vicarious liability at this stage. And assuming that Defendant is correct that it cannot be held liable for medical

malpractice, this argument does not affect the viability of Plaintiff's ordinary

negligence claim, which is pleaded in the alternative. Whether Plaintiff's claim is

properly characterized as sounding in medical malpractice or ordinary negligence,

whether the County may be vicariously liable, and whether it is entitled to

governmental immunity are matters that require factual development.

Defendant also claims that it is shielded from liability by the Pandemic

Health Care Immunity Act, M.C.L. § 691.1471, *et seq.* The statute provides:

> A health care provider or health care facility that provides health
> care services in support of this state's response to the COVID-19
> pandemic is not liable for an injury, including death, sustained
> by an individual by reason of those services, regardless of how,
> under what circumstances, or by what cause those injuries are
> sustained, unless it is established that the provision of the
> services constituted willful misconduct, gross negligence,
> intentional and willful criminal misconduct, or intentional
> infliction of harm by the health care provider or health care
> facility.

M.C.L. § 691.1475; *see also* Michigan Executive Order 2020-30 (rescinded).

However, defendant has not articulated how it fits the definition of "health care

provider" or "health care facility" as set forth in the statute. M.C.L. § 691.1473

(definitions; incorporating M.C.L. § 333.20106). Moreover, the statute provides

that "[t]he liability protection provided by this act applies retroactively, and

applies on or after March 29, 2020 and before July 14, 2020." M.C.L. § 691.1477.

Plaintiff's claim arose in 2021 and does not fall within this statutory timeframe.

In sum, Genesee County has not established that it is entitled to immunity or dismissal with respect to Plaintiff's negligence/medical malpractice claim at this stage of the proceedings, as further factual development is required.

## IV.     CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' motions to dismiss (ECF Nos. 46, 47) are DENIED.

**SO ORDERED.**


Date: April 11, 2025                             s/F. Kay Behm
                                                 F. Kay Behm
                                                 United States District Judge